EXHIBIT
A

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI220001611
Transaction ID: 0018061798
Filing Date: 03/07/2022 10:21:52 AM CST

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| KIMBERLY MOREHEAD, | ) | CASE NO. CI 22-_____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **JUDGEMENT** |
| FISERV SOLUTIONS, LLC. | ) | |
| Defendant. | ) | |

COMES NOW, the Plaintiff, Kimberly Morehead, by and through her Counsel of record, for a complaint for declaratory judgement pursuant to Neb. Rev. Stat. § 25-21,149 against Defendant Fiserv, Inc., states and alleges the following:

1. The Plaintiff, Kimberly Morehead ("Morehead") is a resident of Douglas County, Nebraska, and was formerly employed by Defendant, Fiserv Solutions, LLC.

2. Defendant, Fiserv Solutions LLC ("Fiserv"), is a Wisconsin limited liability corporation conducting significant business in Nebraska and has employees located in Nebraska.

3. This court has appropriate jurisdiction as the events that transpired herein occurred within this judicial jurisdiction.

4. Morehead worked for Fiserv from October 3, 1988 until October 15, 2021.

5. Fiserv is a global financial technology and payments company focusing on providing solutions in banking, global commerce, merchant acquiring, billing and payments, and point-of-sale. Fiserv's clients include banks, thrifts, credit unions, securities broker dealers, leasing and financing companies, and retailers.

6. While employed at Fiserv, Morehead's official title was Senior Vice President of Financial Institution Sales. Morehead's primary job functions involved leading a team of Account Executives, Account Executive Leaders, and Relationship Managers that focused on identifying and qualifying new sales opportunities and meeting or exceeding targeted goals for sales quotas and revenue growth. Morehead's role within Fiserv was sales-driven and goal oriented with existing client development being a primary focus of her position. Morehead's revenue management totaled $800,000,000, with strategic client growth focusing on seventy clients in the midwest and west coast regions all with assets totaling $10,000,000,000 and above.

7. One of Fiserv's numerous clients is Payment Systems for Credit Unions ("PCSU"). PCSU is a credit union service focusing exclusively on providing payment technology to small to mid-sized credit unions.

8. On or about October 15, 2021, Morehead ceased employment with Fiserv and began employment with PCSU. Morehead's primary role as an employee of PSCU is to manage an only existing block of credit union clients within a specific territory whose assets are $5,000,000,000 and below. Morehead's responsibilities are client-retention based and Morehead will not be operating in a sales capacity conducting any outside sales procurement for new clients.

9. Upon Morehead's departure from employment with Fiserv, Morehead and Fiserv signed and agreed upon a "Release of Claims" (the "Release"). A true and accurate copy of the Release, including all attached Exhibits and sub-agreements, is attached hereto as <u>Exhibit A</u>.

10. Attached to the Release as "Exhibit A" is a "Restrictive Covenant Agreement" (the "Agreement"). The Agreement states, in relevant part:

**II. Non-Competition.** Employee agrees that for twenty-four (24) months after employment termination from Company for any reason, Employee will not, on Employee's behalf or another's behalf, engage in any activities for a competitor of Company that are the same or substantially similar to the activities Employee performed on behalf of Company during the last 24 months prior to termination. The restriction in this paragraph is limited to the geographic area that is the same or substantially similar to the geographic area that Employee serviced at the time of Employee's termination. Employee agrees that prospective employers exist such that employment opportunities are available to Employee which would not be in violation of this Section II. Employee further agrees that this Section II is reasonable in scope and does not constitute a restraint of trade with respect to Employee's ability to obtain alternate employment in the event Employee's employment with the Company terminates for any reason, and regardless of whether such termination is initiated by Employee or Company.

**III. Non-Solicitation of Customers.** Employee agrees that, for twenty-four (24) months after the cessation of Employee's employment with the Company, Employee will not solicit, contact, or call upon any customer or prospective customer of the Company for the purpose of

providing any products or services substantially similar to those Employee provided while employed with the Company. This restriction will apply only to any customer or prospective customer of the Company with whom Employee had contact or about whom Employee learned Trade Secrets, Confidential Information, or Third-Party Information during the last twenty-four (24) months of Employee's employment with the Company. For the purpose of this paragraph, "contact" means interaction between Employee and the customer, or prospective customer which takes place to further the business relationship or making sales to or performing services for the customer, or prospective customer on behalf of the Company.

**IV. Non-Solicitation of Employees.** For twelve (12) months after the cessation of employment with the Company, Employee will not recruit, hire, or attempt to recruit, directly or by assisting others, any employee of the Company with whom Employee had contact or about whom Employee learned Trade Secrets, Confidential Information or Third Party Information during Employee's last twenty-four (24) months of employment with the Company. For the purposes of this paragraph, "contact" means any business-related interaction between Employee and the other employee.

11. On or about February 14, 2022, Morehead received a letter dated February 11, 2022 by and through Fiserv's counsel stating Morehead was in violation of the Release and Agreement by accepting her new role with PCSU. This letter alleged PSCU was a competitor of Fiserv. A true and accurate copy of this letter is attached hereto as <u>Exhibit B</u>.

12. On or about February 14, 2022, Morehead responded to the February 11, 2022 letter via email to Fiserv's counsel explaining the plethora of differences between Fiserv and PSCU as companies and that PSCU is not a competitor of Fiserv but rather a customer. A true and accurate copy of this email is attached hereto as <u>Exhibit C</u>.

13. On or about February 18, 2022, Fiserv by and through their counsel, sent Morehead a second letter disagreeing with her position that PSCU is a customer of Fiserv and the size difference of the companies not significant and that Morehead continues to violate the Release and Agreement. A true and accurate copy of this letter is attached hereto as <u>Exhibit D</u>.

14. PSCU is a customer of Fiserv, serves clients of completely different financial and logistical size, and Morehead's primary role for PSCU is significantly different than her role while employed for Fiserv. Morehead has zero competitive intelligence from Fiserv that could be shared with PSCU as the clients of either company differ significantly in size.

15. There is no adequate remedy at law to determine the rights of the parties pursuant to the Release and its attached Agreements

WHEREFORE, Plaintiff prays this Court, pursuant to Neb. Rev. Stat. § 25-21, 149, enter a declaratory judgement as follows:

a) determining the Release and Agreement are overly broad in nature, restraint trade, are unduly harsh to Plaintiff Kimberly Morehead, and are therefore void and unreasonable;

b) if not determined to be void, determining the rights and obligations of the parties under the Release and Agreement;

c) finding that Plaintiff Kimberly Morehead has complied with the terms of the Release and Agreement;

d) finding that the Release and Agreement does not preclude Plaintiff Kimberly Morehead from working at PSCU pursuant to the plain language of the Release and Agreement;

e) finding that Plaintiff Kimberly Morehead is free from any moneys owed to Defendant Fiserv Inc;

f) and for any further relief that this Court deems fair and just.

DATED this the 4th day of March, 2022.

**KIMBERLY MOREHEAD,**
Plaintiff

BY_____
Raymond R. Aranza, #18523
WALENTINE O'TOOLE, LLP
11240 Davenport Street
Omaha, Nebraska 68154

Phone: 402-330-6300
E-Mail: <u>raranza@walentineotoole.com</u>
**ATTORNEY FOR PLAINTIFF**



**PLEASE FOLLOW INSTRUCTIONS TO SIGN
AND RETURN VIA DOCUSIGN**

YOU WILL RECEIVE A SIGNED COPY OF THIS RELEASE ONCE
YOUR PAYMENT HAS BEEN APPROVED FOR PROCESSING.

## RELEASE OF CLAIMS

This is a Release of Claims (**Release**) between Kim Morehead (**Employee**) and Fiserv, Inc., on behalf of itself and its subsidiaries and other company affiliates (individually or collectively referred to as the (**Company**), which governs Employee's termination from employment effective October 15, 2021(**Termination Date**).

**1.    Transition Payment.**
In consideration for Employee's execution of this Release and of the promises exchanged in this Release, the Company agrees to pay Employee a transition payment in the total gross amount of $466,000, less any employment withholding and income taxes. The transition payment will be paid to Employee in one lump sum payment within two pay periods after the Company has received the signed Release.

To the extent permitted under applicable law, Employee agrees the Company may deduct from the payment under this Release any outstanding debt Employee owes the Company. Examples of debts include the value of unreturned property, prorated bonuses, Employee's use of unaccrued paid time off, and any overpayment made to Employee (including payments made in error under this Release).

**2.    Released Parties.**
In exchange for the Company's promises contained in this Release, Employee agrees to irrevocably and unconditionally release the Claims stated in Section 3 which Employee may now have against the Company or any other Released Parties. The "Released Parties" includes the Company and its related companies, subsidiaries, partnerships, joint ventures, predecessors, successors, past and present associates, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, associate benefit programs (and administrators and insurers of such programs), and any other persons acting by, through, under or in connection with any of the persons or entities listed in this Section.

**3.    Released Claims.**
Employee understands and agrees that Employee is releasing all known and unknown claims, promises, causes of action, or similar rights of any type that Employee may have (**Claims**) against any of the Released Parties. Employee further understands that the Claims Employee is releasing may arise under many different laws (including statutes, regulations, other administrative guidance, and common law doctrines). Specifically included in this waiver and release are, among other things, claims of unlawful discrimination, harassment, or failure to accommodate; related to terms and conditions of employment; for compensation or benefits; and/or for wrongful termination of employment, including damages, attorney's fees, costs, and expenses and, without limiting the generality of the foregoing, to all claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act of 1967, the Civil Rights Act of 1866, the Employee Retirement Income Security Act,  the Family and Medical Leave Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, any amendments to the foregoing, or any other federal, state or local statute, rule, ordinance, or regulation, as well as claims in equity or under common law for tort, breach of contract, wrongful discharge, defamation, emotional distress, and negligence. This waiver and release does not apply to any claims or rights that may arise after the date that Employee signs this Release. Employee is knowingly and voluntarily expressly waiving all rights Employee might have under any laws, including without limitation the laws set forth in this Release's Exhibit A, intended to protect Employee from waiving unknown claims. Employee understands the significance of doing so.

**4.    Existing Agreements.**
Employee understands that any agreements Employee has signed with the Company concerning confidentiality, competition, security, ownership of inventions or intellectual property, equity or stock plans, or the like, are not superseded by this Release. Rather, the terms of such agreements are incorporated by reference and, to the extent such agreements impose additional and/or broader protections or obligations than contained in this

2

Release, then such terms and conditions will be controlling. Employee further understands and affirms that Employee is required to abide by any restrictive covenant provision included in any stock award agreement between Employee and Company, including any non-disclosure, non-compete, and/or non-solicitation provisions, as well as the covenants included in Exhibit A attached to this Release. Employee further understands that all of the other terms and conditions of his/her stock awards will continue to apply following the execution of this Agreement and that if Employee breaches any of the restrictive covenant provision(s) in his/her stock award agreements, Employee will be required to repay the Company the payments and the value of equity vested as described in Paragraph 1 of this Release.

**5.     Return of Company Equipment and Confidentiality.**
Employee represents and warrants that Employee has returned all confidential information, computer hardware or software, files, papers, memoranda, correspondence, customer lists, financial data, credit cards, keys, tape recordings, pictures, and security access cards, and any other items of any nature which are the property of the Company. Employee further agrees not to retain any tangible or electronic copies of any such property in Employee's possession or control. Employee also agrees to maintain the confidentiality of this Release and will not disclose in any fashion the terms of this Release or the amount of the transition benefits Employee receives to any person other than Employee's attorneys, accountants, and tax advisors as required by appropriate taxing authorities, or as otherwise required by law.

**6.     No Interference Rights.**
Nothing in this Release (including but not limited to the acknowledgements, release of claims, the promise not to sue, the confidentiality obligations, and the return of property provision): (a) prevents Employee from communicating with, filing a charge or complaint with, or from participating in an investigation or proceeding conducted by the EEOC, the National Labor Relations Board, the Securities and Exchange Commission, or any other federal, state or local agency charged with the enforcement of any laws, including providing documents or any other information; or (b) precludes Employee from exercising his/her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. By signing this Release, Employee is waiving his/her right to recover any individual relief (including any back pay, front pay, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by Employee or on his/her behalf by any third party, except for any right Employee may have to receive a payment or award from a government agency (and not the Company) for information provided to the government agency or where otherwise prohibited. Except for Employee's confidentiality and non-disclosure obligations in this Release, Employee understands that as provided by the Federal Defend Trade Secrets Act, Employee will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret made: (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

**7.     Terms of the Release.**
Employee agrees that Employee has read this Release and understands it and agrees to its terms and conditions freely and voluntarily. In evaluating this Release, Employee has made his/her own assessment of the facts and circumstances and has not relied on any statements or representations made by the Company, other than those contained in this Release. Employee is advised in writing to seek legal counsel before signing this Release. Employee understands that he/she has 21 days from the date this Release was presented to Employee to consider whether to accept the transition and other benefits offered in this Release. Employee understands that Employee may revoke her signature on and her agreement to the terms of this Release within 7 calendar days of its execution by delivering written notice to the Company by certified mail, return receipt requested, stating Employee's intention to revoke.  Employee understands that if she does exercise this right and revokes this Release, Employee will not be entitled to receive the severance benefit, as stated in Section 1, above, and that neither the Company nor Employee will be bound by any of the obligations stated in this Release.  Employee also understands that this Release has no effect until the time for Employee's right to revoke it has expired.  Employee understands that if she executes this Release and does not make a timely revocation of it, this Release will become

3

effective on the eighth day following its execution. The transition and other benefits described in Section 1 of this Release are benefits to which Employee would not be entitled if she did not sign this Release.

**8.    Cooperation.**
Following Employee's separation date, Employee agrees that he/she will remain reasonably available to Company as needed to assist in the smooth transition of his/her duties to one or more other associates of the Company and without additional compensation to Employee and to assist in the defense of the Company in pending or threatened litigation and any other administrative and regulatory proceedings which currently exist or which may arise in the future and involve the conduct of the Company's business activities during the period of Employee's employment with the Company.

**9.    No Work-Related or Other Relevant Injuries; Compensation; and Reports.**
By signing and not revoking this Release, Employee affirms that he/she (i) received all compensation due as a result of services performed for the Company with the receipt of his/her final paycheck; (ii) reported to the Company any and all work-related injuries or occupational disease incurred during Employee's employment by the Company; (iii) has been properly provided any leave requested under the FMLA or similar state or local laws and has not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave; (iv) had the opportunity to provide the Company with written notice of any and all concerns regarding suspected ethical and compliance issues or violations on the part of the Company or any other released person or entity; (v) reported any pending judicial and administrative complaints, claims, or actions Employee filed against the Company or any other released person or entity; and (vi) not raised a claim of sexual harassment, abuse, assault or other criminal conduct, or retaliation involving the Company or any other Released Party.

**10.    Nondisparagement.**
Employee agrees, on a permanent basis following the termination of Employee's employment, not to speak or otherwise publish any statement in a disparaging fashion about the Company or Released Parties, members of their management, or their products, business strategies, services, or other related matters. It is understood that Employee may give truthful testimony if legally required to do so.

**11.    Additional Covenants.**
Any provision of this Release that is deemed invalid, illegal or unenforceable will be modified to the extent necessary to make it enforceable and will not affect the enforceability or validity of the remaining portions of this Release. The terms of this Release will be governed by the laws of the State of Wisconsin. Any legal action brought to enforce this Release will be brought in a court of competent jurisdiction in the State of Wisconsin or in a court of competent jurisdiction in the state where Employee's employment with the Company was primarily located. Employee waives any objection to venue and personal jurisdiction in such a court. This Release represents the entire agreement as to the subject matter contained in this Release between the Company and Employee. Employee understands and agrees that this Release cannot be changed unless the change is in writing and is signed by Employee and by an authorized representative of the Company.

**NOTE: This Release must be signed and all pages returned to the Company without any alteration. Any modification or alteration of any terms of this Release voids the Release in its entirety. This document is sent with an electronic signature for convenience of the parties only and is not an assent to any modifications made post-signature.**

Associate:

_____
Signature

_____
Printed Name

_____
Date

Company:

*Anthony S. Marino*
_____
Signature

Anthony S. Marino
_____
Printed Name

_____
Date

*The Release of Claims must be signed __on or after Employee's termination date__ in order to process your transition payment.*

*Employee will not receive the transition or other payments/benefits until the Release of Claims has been returned. If the executed Release of Claims is not returned within 21 calendar days from the date it was presented to Employee, Employee will forfeit all transition pay and other benefits described in Section 1 of this Release.*

**EXHIBIT A**
**RESTRICTIVE COVENANT AGREEMENT**

For purposes of this Exhibit A, "Company" refers to Fiserv, Inc., or its subsidiary or affiliate which employs Employee (individually and collectively referred to as the **Company**).

Employee agrees that the Company is engaged in a highly competitive business and has expended, and continues to expend, significant money, skill, and time to develop and maintain valuable customer relationships, trade secrets, and confidential and proprietary information. Employee agrees that Employee's work for the Company has brought Employee into close contact with many of the Company's customers, Trade Secrets, Confidential Information, and Third Party Information (as defined below) and the Company has provided Employee access to such information to perform Employee's job duties, the disclosure and/or use of which would cause the Company significant and irreparable harm. Employee recognizes that any unauthorized disclosure and/or use of Third Party Information could breach non-disclosure obligations or violate applicable laws or Company policy. Employee further agrees that the covenants in this Agreement are reasonable and necessary to protect the Company's legitimate business interests in its customer relationships, Trade Secrets, Confidential Information, and Third Party Information (as defined in Section I below).

I.   **Non-disclosure.** Employee agrees to not - directly or indirectly - use, disclose or disseminate any Confidential Information or Trade Secrets pertaining to the business of Company. Further, Employee agrees to abide by the terms and conditions of software license, non-disclosure, and confidentiality agreements entered into by Company (**Third Party Agreements**).This non-disclosure obligation will not apply to any Confidential Information or Trade Secrets which have become generally known to competitors of the Company through no act or omission by Employee. The obligations in this paragraph will not apply to Employee's communications that are required by law or judicial process (e.g., subpoena) or to secure advice from a legal or tax advisor or outplacement provider. Additionally, nothing in this Agreement precludes Employee from communicating with any government agencies, including the Securities and Exchange Commission or the Equal Employment Opportunity Commission. In this Agreement:

"Confidential Information" means any data, information or documentation (including such that is received by third parties) that is competitively sensitive or commercially valuable and not generally known to the public, including data, information or documentation related or pertaining to: (i) finance, supply or service; (ii) customers, suppliers or consumers, including customer lists, relationships and profiles; (iii) marketing or product information, including product planning, marketing strategies, marketing results, marketing forecasts, plans, finance, operations, reports, sales estimates, business plans and internal performance results relating to past, present or future business activities, clients and suppliers; and (iv) scientific or technical information, design, process, procedure, formula or improvement, computer software, object code, source code, specifications, inventions or systems information, whether or not patentable or copyrightable, and that is not otherwise a Trade Secret; and

"Trade Secrets" means, without limitation, (i) any data or information that is competitively sensitive or commercially valuable and not generally known to the public and (ii) any scientific or technical information, design, process, procedure, formula or improvement, computer software, object code, source code, specification, invention or systems information, whether or not patentable or copyrightable, provided that this definition of Trade Secrets shall have the broadest meaning as permitted by law and shall extend beyond the definition of "trade secrets" as set forth in the Delaware Uniform Trade Secrets Act.

II.   **Non-Competition.** Employee agrees that for twenty-four (24) months after employment termination from Company for any reason, Employee will not, on Employee's behalf or another's behalf, engage in any activities for a competitor of Company that are the same or substantially similar to the activities Employee performed on behalf of Company during the last 24 months prior to termination. The restriction in this paragraph is limited to the geographic area that is the same or substantially similar to the geographic area that Employee serviced at the time

6

of Employee's termination.

Employee agrees that prospective employers exist such that employment opportunities are available to Employee which would not be in violation of this Section II. Employee further agrees that this Section II is reasonable in scope and does not constitute a restraint of trade with respect to Employee's ability to obtain alternate employment in the event Employee's employment with the Company terminates for any reason, and regardless of whether such termination is initiated by Employee or Company.

**III.   Non-Solicitation of Customers.** Employee agrees that, for twenty-four (24) months after the cessation of Employee's employment with the Company, Employee will not solicit, contact, or call upon any customer or prospective customer of the Company for the purpose of providing any products or services substantially similar to those Employee provided while employed with the Company. This restriction will apply only to any customer or prospective customer of the Company with whom Employee had contact or about whom Employee learned Trade Secrets, Confidential Information, or Third Party Information during the last twenty-four (24) months of Employee's employment with the Company. For the purpose of this paragraph, "contact" means interaction between Employee and the customer, or prospective customer which takes place to further the business relationship or making sales to or performing services for the customer, or prospective customer on behalf of the Company.

**IV. Non-Solicitation of Employees.** For twelve (12) months after the cessation of employment with the Company, Employee will not recruit, hire, or attempt to recruit, directly or by assisting others, any employee of the Company with whom Employee had contact or about whom Employee learned Trade Secrets, Confidential Information or Third Party Information during Employee's last twenty-four (24) months of employment with the Company. For the purposes of this paragraph, "contact" means any business-related interaction between Employee and the other employee.

**V.   Injunctive Relief.** Employee understands, acknowledges, and agrees that in the event of a breach or threatened breach of any of the covenants contained in this Agreement, the Company will suffer irreparable injury for which there is no adequate remedy at law, and the Company will therefore be entitled to temporary, preliminary, and/or permanent injunctive relief, without bond or other security from the courts, enjoining additional breaches and threatened breaches. Employee further acknowledges that the Company also will have the right to seek a remedy at law as well as or in lieu of equitable relief in the event of any such breach.

**Employee acknowledges that Employee has carefully read, reviewed and fully understands the restrictive covenants contained in this Exhibit A and agrees to be bound by its terms.**

This Agreement is dated the _____ day of _____, 2021.


ON BEHALF OF
COMPANY                                                EMPLOYEE

By: _____        By: _____

      Title: _____

7





**SAUL EWING ARNSTEIN & LEHR** LLP

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

February 11, 2022

**By Email and Overnight Mail**

Kim Morehead
3303 Mitchell Road
Bellevue, NE 68123

    Re:    *Your Continuing Obligations to Fiserv*

Dear Ms. Morehead:

    This Firm represents Fiserv, Inc. We have been advised that in connection with the termination of your employment, you executed a Release of Claims on October 15, 2021, for which you were paid $466,000. At the time of your departure from Fiserv, you were a Senior Vice President, Financial Institution Sales. While working at Fiserv, you were responsible for leading the West Coast team of Account Executives, Account Executive Leaders, and Relationship Managers. In this role, you had significant insight into all aspects of Fiserv's top FI clients (70+) representing almost $800m in annual revenue, including information that is confidential and proprietary to Fiserv, including its trade secrets.

    It is Fiserv's understanding that you have accepted employment with PSCU, a competitor of Fiserv. Fiserv is concerned that your new role may violate your contractual and common law commitments to Fiserv. The purpose of this letter is to remind you of those obligations.

    The Release included an Exhibit A, a Restrictive Covenant Agreement (RCA), which provides in relevant part:

    **II. Non-Competition.** Employee agrees that for twenty-four (24) months after employment termination from Company for any reason, Employee will not, on Employee's behalf or another's behalf, engage in any activities for a competitor of Company that are the same or substantially similar to the activities Employee performed on behalf of Company during the last 24 months prior to termination. The restriction in this paragraph is limited to the geographic area that is the same or substantially similar to the geographic area that Employee serviced at the time of Employee's termination. Employee agrees that prospective

500 E. Pratt Street • Suite 900 • Baltimore, MD 21202-3133
Phone: (410) 332-8600 • Fax: (410) 332-8862

DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  MINNESOTA  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

39631667.1

Kim Morehead
February 11, 2022
Page 2

employers exist such that employment opportunities are available to Employee
which would not be in violation of this Section II. Employee further agrees that
this Section II is reasonable in scope and does not constitute a restraint of trade
with respect to Employee's ability to obtain alternate employment in the event
Employee's employment with the Company terminates for any reason, and
regardless of whether such termination is initiated by Employee or Company.

**III. Non-Solicitation of Customers.** Employee agrees that, for twenty-four (24)
months after the cessation of Employee's employment with the Company,
Employee will not solicit, contact, or call upon any customer or prospective
customer of the Company for the purpose of providing any products or services
substantially similar to those Employee provided while employed with the
Company. This restriction will apply only to any customer or prospective
customer of the Company with whom Employee had contact or about whom
Employee learned Trade Secrets, Confidential Information, or Third Party
Information during the last twenty-four (24) months of Employee's employment
with the Company. For the purpose of this paragraph, "contact" means interaction
between Employee and the customer, or prospective customer which takes place
to further the business relationship or making sales to or performing services for
the customer, or prospective customer on behalf of the Company.

**IV. Non-Solicitation of Employees.** For twelve (12) months after the cessation of
employment with the Company, Employee will not recruit, hire, or attempt to
recruit, directly or by assisting others, any employee of the Company with whom
Employee had contact or about whom Employee learned Trade Secrets,
Confidential Information or Third Party Information during Employee's last
twenty-four (24) months of employment with the Company. For the purposes of
this paragraph, "contact" means any business-related interaction between
Employee and the other employee.

(emphasis supplied).

On October 15, 2021, the same date you executed the Release, you also elected to sign a
Qualifying Retirement Election Form. By executing that QREF (which provides for vesting of
equity awards that would otherwise not have vested), you agreed that:

☒ I elect a qualifying retirement under the governing equity plan and award
agreement. I understand that by electing a qualifying retirement, I will be bound
by ALL of the terms of the applicable equity plan and award agreement, including
without limitation:

- A requirement to continue working for Fiserv for up to six months,
  at Fiserv's option;
- A one year non-compete;

Kim Morehead
February 11, 2022
Page 3

- A two year non-solicit of Fiserv/First Data's customers or
  employees; and
- A promise to execute a separation agreement and general release in
  a form acceptable to Fiserv.

The Release specifies that the RCA is in addition to any other restrictive covenants to which you were bound:

**4. Existing Agreements.** Employee understands that any agreements Employee has signed with the Company concerning confidentiality, competition, security, ownership of inventions or intellectual property, equity or stock plans, or the like, are not superseded by this Release. Rather, the terms of such agreements are incorporated by reference and, to the extent such agreements impose additional and/or broader protections or obligations than contained in this Release, then such terms and conditions will be controlling. Employee further understands and affirms that Employee is required to abide by any restrictive covenant provision included in any stock award agreement between Employee and Company, including any non-disclosure, non-compete, and/or non-solicitation provisions, as well as the covenants included in Exhibit A attached to this Release. Employee further understands that all of the other terms and conditions of his/her stock awards will continue to apply following the execution of this Agreement and that if Employee breaches any of the restrictive covenant provision(s) in his/her stock award agreements, Employee will be required to repay the Company the payments and the value of equity vested as described in Paragraph 1 of this Release.

In this regard, beginning in 2008, you executed numerous equity award agreements that also contain post-employment restrictive covenants. For instance, your 2020 and 2021 RSU Agreements provide in Paragraph 4, among other things, that you cannot accept employment that would violate the terms of the restrictive covenants without the written consent of Fiserv's Chief Executive Officer. If the facts are true as we understand, and you have accepted employment with PSCU without seeking the authorization of Fiserv's CEO, then you are in breach of your covenants in various equity award agreements.

Fiserv regards the confidentiality and non-use of its Confidential Information as critically important and expects full compliance with these obligations to which you have committed. In addition, it is our client's position that you cannot engage in any activities for PSCU that are the same or substantially similar to the activities you performed on behalf of Fiserv.

Please know that Fiserv will take appropriate action to enforce the RCA and related agreements. If you breach your obligations to Fiserv, the Company reserves its right to file suit for breach of contract and seek injunctive relief.

We encourage you to share this letter immediately with your legal counsel and discuss this matter with PSCU to ensure there is no misunderstanding as to Fiserv's expectations. By

39651667.1

Kim Morehead
February 11, 2022
Page 4

Tuesday, February 15, 2022, please provide me with the requested assurance of your intention to abide by your obligations to Fiserv and not accept employment or engage in any activities that "are the same or substantially similar to the activities" you performed on behalf of Fiserv during the last 24 months of your employment.

We are also copying the CEO of PSCU so that he is aware of your post-employment obligations to Fiserv

Thank you for your anticipated cooperation.

Very truly yours,

Gary B. Eidelman

cc: Charles Fagan, CEO (by overnight mail)
PSCU
560 Carillon Parkway
St. Petersburg, FL 33716

Jill Poole, Fiserv, Inc. (by email)



**Nick Banelli**

EXHIBIT C

| | |
|---|---|
| **From:** | Raymond R. Aranza |
| **Sent:** | Tuesday, February 22, 2022 9:46 AM |
| **To:** | Tracy A. Adams |
| **Subject:** | FW: Continuing Obligations to Fiserv |

**From:** Kim Morehead <Kim.morehead@yahoo.com>
**Sent:** Tuesday, February 22, 2022 7:32 AM
**To:** Raymond R. Aranza <raranza@walentineotoole.com>
**Subject:** Fwd: Continuing Obligations to Fiserv

The email I sent back.

Sent from my iPhone

Begin forwarded message:

> **From:** "Eidelman, Gary B." <Gary.Eidelman@saul.com>
> **Date:** February 14, 2022 at 4:07:26 PM CST
> **To:** Kim Morehead <Kim.morehead@yahoo.com>
> **Cc:** Jill.Poole@fiserv.com, michael.gandolfo@fiserv.com
> **Subject: RE: Continuing Obligations to Fiserv**

> Dear Ms. Morehead:

> Thank you for your email and the information. I am reaching out to my client to discuss and will revert back to you promptly.

**SAUL EWING ARNSTEIN & LEHR** LLP

**Gary B. Eidelman**
**Chair, Labor and Employment Group**
**SAUL EWING ARNSTEIN & LEHR LLP**
500 E. Pratt Street
Suite 900 | Baltimore, MD 21202-3133
Office Tel: 410.332.8975 | Mobile: 410.303.8832
Fax: 410.332.8976
gary.eidelman@saul.com | www.saul.com



*Subscribe to our blog, WISE: Workplace Initiatives and Strategies for Employers, here.*

1

-----Original Message-----
From: Kim Morehead <kim.morehead@yahoo.com>
Sent: Monday, February 14, 2022 2:17 PM
To: Eidelman, Gary B. <Gary.Eidelman@saul.com>
Cc: Jill.Poole@fiserv.com; michael.gandolfo@fiserv.com
Subject: Continuing Obligations to Fiserv

**EXTERNAL EMAIL** - This message originates from outside our Firm. Please consider carefully before responding or clicking links/attachments.

Dear Mr. Eidelman,

I wanted to let you know that I did receive the letter you sent to my attention this morning. While I am in receipt of the letter I do not agree that my employment with PSCU is in violation of my continuing obligations to Fiserv. I can assure you that if I thought I would be in violation I would have reached out to the appropriate individuals within Fiserv prior to proceeding with any employment offer. I do not view PSCU as a competitor to Fiserv, but rather a client of Fiserv. Further, I will not be in a sales role for existing clients or a sales role that pursues new logo's for PSCU. My role at PSCU will be to manage a territory of existing clients/credit unions to help ensure that PSCU retains those clients. I saw the role and my involvement in the role as a benefit to Fiserv given that if the Credit Union maintains their relationship with PSCU it is beneficial to Fiserv, given that PSCU retains their processing services from Fiserv.

Additionally, the role at PSCU is substantially smaller than the role I had with Fiserv. Revenue management will be $100M versus the $800M I managed while at Fiserv. The clients I will manage at PSCU are small to mid size Credit Unions while the clients I managed at Fiserv for the past 24 months were large Financial Institutions.

I would like to ensure we clear this matter up as quickly as possible.

My cell phone number is 402-981-0864. Please let me know how you wish to proceed.

Thank you!

Kim Morehead

"Saul Ewing Arnstein & Lehr LLP (saul.com)" has made the following annotations:
+~~~~~~~~~~~~~~~~~~~~~~~+
This e-mail may contain privileged, confidential, copyrighted, or other legally protected information. If you are not the intended recipient (even if the e-mail address is yours), you may not use, copy, or retransmit it. If you have received this by mistake please notify us by return e-mail, then delete.
+~~~~~~~~~~~~~~~~~~~~~~~+

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.



**EXHIBIT**

**D**



SAUL EWING

ARNSTEIN

& LEHR LLP

Gary B. Eidelman
Phone: (410) 332-8975
Fax: (410) 332-8976
Gary.Eidelman@saul.com
www.saul.com

February 18, 2022

**By Email**

Kim Morehead
3303 Mitchell Road
Bellevue, NE 68123

Re:    *Your Continuing Obligations to Fiserv*

Dear Ms. Morehead:

This letter will serve as a follow up to my letter of February 11, 2022 and our recent email exchange in which you have taken the position that your employment with PSCU will not breach your contractual obligations to Fiserv. According to you, your new job is not the same or substantially similar to your prior role at Fiserv. More specifically, you assert that:

> I do not view PSCU as a competitor to Fiserv, but rather a client of Fiserv. Further, I will not be in a sales role for existing clients or a sales role that pursues new logo's for PSCU. My role at PSCU will be to manage a territory of existing clients/credit unions to help ensure that PSCU retains those clients. . . .

> Additionally, the role at PSCU is substantially smaller than the role I had with Fiserv. Revenue management will be $100M versus the $800M I managed while at Fiserv. The clients I will manage at PSCU are small to mid size Credit Unions while the clients I managed at Fiserv for the past 24 months were large Financial Institutions.

I would like to first address your comment that PSCU and Fiserv are not competitors. Fiserv disagrees with your position. Even though Fiserv provides processing services for some PSCU clients, Fiserv and PSCU are competitors - both companies serve credit unions as their clients. More succinctly, Fiserv's existing credit union clients are PSCU's prospects and targets, and PSCU's existing credit union clients are Fiserv's prospects and targets.

---

Kim Morehead
February 18, 2022
Page 2

With respect to the similarity of your former and new position, Fiserv disagrees with your comments that the roles are not similar. While employed by Fiserv, your duties and responsibilities included building and managing client relationships and driving retention of existing clients; duties quite similar to your job description at PSCU. In your Fiserv role, among other things, you were responsible for:

- Delivering revenue realization and growth through the orchestration of new solution sales and successful execution of the contract renewal process and its lifecycle;
- Identifying and qualifying new sales opportunities;
- Developing and maintain account plans;
- Expanding and improving relationships with client;
- Monitoring client engagement
- Managing client escalations and issue resolutions to ensure client satisfaction
- Participating in meetings with prospects, clients, and potential partners to assist with sales and business development opportunities; and
- Meeting or exceed targeted goals for client satisfaction, sales quota, renewals, and revenue growth.

Based on the description of your new job duties, which includes your management and retention of existing PSCU clients in the West Region (the same region you supported at Fiserv), Fiserv does not agree with your assessment that your new job is not the same or substantially similar to your prior role. Fiserv expects that in your new role for PSCU, you will be doing the same thing for PSCU's clients that you did for Fiserv's clients regardless of size.

As you are aware under the circumstances surrounding the termination of your employment, Fiserv was under no contractual obligation to offer you a separation package. Despite this, Fiserv agreed to pay you $460,000 in a lump sum (Separation Payment) in exchange for you executing a release and restrictive covenant agreement, all of which is more fully described in my February 11, 2022 letter. Although Fiserv continues to believe that your employment with PSCU will be a breach of your contractual obligations, it is prepared to waive the breach and allow you to work for PSCU in your client facing role, provided that you agree to the following terms and conditions:

1. You repay to Fiserv the gross amount of $300,000 from the Separation Payment.
2. You agree for 24 months not to directly or indirectly manage or supervise any former Fiserv employees who reported to you or who you managed during your employment with Fiserv.

If you agree, these terms will be memorialized in an amendment to the Release and RCA. All other terms and conditions of the Release and any post-employment restrictive covenants will continue to apply including, but not limited to, your contractual obligation not to solicit Fiserv clients and employees or disclose confidential and proprietary information, including trade secrets.

Kim Morehead
February 18, 2022
Page 3


Let me reiterate that unless you agree to the terms set forth above, which will allow you to work for PSCU despite your contractual agreements, Fiserv will not hesitate to take appropriate action to enforce the RCA and related agreements for which you were paid considerable amounts of money. This may include a complaint for injunctive relief and damages.

I await your response.

Very truly yours,

Gary B. Eidelman

cc: Jill Poole, Fiserv, Inc. (by email)

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI220001611
Transaction ID: 0018061798
Filing Date: 03/07/2022 10:21:52 AM CST

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| KIMBERLY MOREHEAD, | ) | CASE NO. CI 22-_____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **PRAECIPE FOR SUMMONS** |
| | ) | |
| FISERV SOLUTIONS, LLC. | ) | |
| Defendant. | ) | |

TO:     CLERK OF COURT

PLEASE ISSUE SUMMONS, along with a copy of the Petition for service upon the

Defendant by Certified Mail as follows:

Fiserv Solutions, LLC
C/O Corporation Service Company, Registered Agent
8040 Excelsior Drive
Ste 400
Madison, WI 53717-2915

DATED this the 7th day of March, 2022.

**KIMBERLY MOREHEAD**,
Plaintiff

By: /s/Raymond R. Aranza
     Raymond R. Aranza, #18523
     WALENTINE O'TOOLE, LLP
     11240 Davenport Street
     Omaha, Nebraska 68154
     Phone: 402-330-6300
     E-Mail: raranza@walentineotoole.com
     **ATTORNEY FOR PLAINTIFF**

Image ID:
D00783298D01

**SUMMONS**

Doc. No.    783298

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
        1701 Farnam
        Omaha                    NE 68183

Kimberly Morehead v. FISERV SOLUTIONS, LLC

                                    Case ID: CI 22    1611

TO:  FISERV SOLUTIONS, LLC

                                    **FILED BY**

                          Clerk of the Douglas District Court
                                    03/07/2022

You have been sued by the following plaintiff(s):

        Kimberly Morehead

Plaintiff's Attorney:    Raymond R Aranza
Address:                 P.O. Box 540125
                         11240 Davenport St.
                         Omaha, NE 68154-0125
Telephone:               (402) 330-6300

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date: MARCH  7, 2022      BY THE COURT:      _John M. Friend_
                                                  Clerk

Image ID:
D00783298D01

**SUMMONS**

Doc. No.    783298

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        FISERV SOLUTIONS, LLC
        Corp. Service Co. Reg. Agent
        8040 Excelsior Drive, # 400
        Madison, WI 53717

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

## SERVICE RETURN

Doc. No.    783298

```
         Douglas District Court
1701 Farnam
Omaha                NE 68183
```

To:
Case ID: CI 22    1611 Morehead v. FISERV SOLUTIONS, LLC

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return    $ _____

Copy                    _____

Mileage ____miles       _____

  TOTAL              $ _____

Date: _____    BY: _____
                                   (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: FISERV SOLUTIONS, LLC            From:  Raymond R Aranza
    Corp. Service Co. Reg. Agent            P.O. Box 540125
    8040 Excelsior Drive, # 400             11240 Davenport St.
    Madison, WI 53717                       Omaha, NE 68154-0125
```

## ATTACH RETURN RECEIPT & RETURN TO COURT